UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

RICHARD GERHART and DONNA
GERHART, individually and on
behalf of all others similarly
situated,

        Plaintiffs,

   v.

dba BEAZER HOMES HOLDINGS
CORP., a Delaware Corporation,
*et al.*,

        Defendants.

NO. CIV. S-08-1650 FCD/KJM

<u>MEMORANDUM AND ORDER</u>

----oo0oo----

    This matter is before the court on defendants Beazer Homes Holdings Corp., Beazer Homes USA Inc., and Security Title Insurance Company's (collectively "defendants") motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.[1] Plaintiffs Richard Gerhart and Donna Gerhart

---

[1] Any further references to a "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise stated.

1

("plaintiffs") oppose the motion. For the reasons set forth below,[2] defendants' motion to dismiss is GRANTED on the basis that plaintiffs' sole federal claim is time barred by the statute of limitations.

**BACKGROUND**[3]

Defendants Beazer Homes Holdings Corp. and Beazer Homes USA Inc. (collectively "Beazer") build and sell new homes. (SAC ¶ 4.) In or about March 1999, Beazer created defendant Security Title Insurance Company ("Security Title"), a wholly owned subsidiary, as a title reinsurance company. (Id. at ¶¶ 21, 23.) Reinsurance is a service whereby an insurance company (the "primary" insurer) has a second insurance company (the "reinsurer") reinsure its risk. Beazer allegedly referred business to outside title insurers on the condition that the title insurers use Security Title to reinsure the referred transactions. (Id. at ¶ 21.) Through its reinsurance arrangements, Beazer allegedly obtained monies for the referral of title insurance business. (Id.) Plaintiffs allege that the purported reinsurance services and fees were not bona fide, but instead were a sham established to disguise kickbacks and fee splitting amongst defendants and primary title insurance companies. (Id. at ¶¶ 25, 26, 27.) More specifically, plaintiffs allege that the kickbacks and fee-splits violated the

---

[2] Because oral argument will not be of material assistance, the court orders this matter submitted on the briefs. E.D. Cal. L.R. 78-230(h).

[3] The facts contained herein are drawn from plaintiffs' second amended complaint. (Pls.' Second Amended Complaint ("SAC"), filed Nov. 26, 2008.)

Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2607, because there was an arrangement with certain primary title insurers that all transactions referred by Beazer would be reinsured with Security Title, and the premium payments to Security Title exceeded the reinsurance risk assumed by Security Title. (Id. at ¶ 27.)

Plaintiffs purchased a new home from Beazer in or about May 2004. (Id. at ¶ 20.) Plaintiffs allege that Security Title acted as a title reinsurer for this transaction and accordingly received part of the premium for title insurance paid to the primary title insurer. (Id. at ¶ 23.) Defendants allegedly made an inadequate and deceptive disclosure regarding the referral arrangement and Security Title's involvement as a purported reinsurer. (Id. at ¶ 28.) In October 2007, defendants settled an action with the United States Department of Housing and Urban Development ("HUD") that had accused defendants of accepting kickbacks in violation of RESPA. (Id. at ¶¶ 29,30.) Plaintiffs allege they did not learn of the kickback arrangements until defendants settled with HUD in October 2007. (Id. at ¶ 31.)

Plaintiffs filed the instant action on March 12, 2008. The SAC asserts a federal claim for violation of RESPA, and state law claims for breach of contract, fraudulent concealment, negligence, unfair business practices, and restitution. Defendants now move to dismiss plaintiffs' claims as untimely.

**STANDARD**

On a motion to dismiss, the allegations of the complaint must be accepted as true. Cruz v. Beto, 405 U.S. 319, 322 (1972). The court is bound to give the plaintiff the benefit of

every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. Retail Clerks Int'l Ass'n v. Schermerhorn, 373 U.S. 746, 753 n.6 (1963). Thus, the plaintiff need not necessarily plead a particular fact if that fact is a reasonable inference from facts properly alleged. See id.

Nevertheless, it is inappropriate to assume that the plaintiff "can prove facts which it has not alleged or that the defendants have violated the . . . laws in ways that have not been alleged." Associated Gen. Contractors of Calif., Inc. v. Calif. State Council of Carpenters, 459 U.S. 519, 526 (1983). Moreover, the court "need not assume the truth of legal conclusions cast in the form of factual allegations." United States ex rel. Chunie v. Ringrose, 788 F.2d 638, 643 n.2 (9th Cir. 1986).

Ultimately, the court may not dismiss a complaint in which the plaintiff alleged "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1973 (2007). Only where a plaintiff has not "nudged [his or her] claims across the line from conceivable to plausible," is the complaint properly dismissed. Id. "[A] court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) (quoting Hudson v. King & Spalding, 467 U.S. 69, 73 (1984)).

In ruling upon a motion to dismiss, the court may consider only the complaint, any exhibits thereto, and matters which may be judicially noticed pursuant to Federal Rule of Evidence 201.

See Mir v. Little Co. Of Mary Hospital, 844 F.2d 646, 649 (9th Cir. 1988); Isuzu Motors Ltd. v. Consumers Union of United States, Inc., 12 F. Supp. 2d 1035, 1042 (C.D. Cal. 1998).

**ANALYSIS**

**I.  Plaintiffs' RESPA Claim**

Defendants move to dismiss plaintiffs' RESPA claim on the ground that it is barred by the applicable statute of limitations.  Congress enacted RESPA to shield home buyers "from unnecessarily high settlement charges by certain abusive practices."  12 U.S.C. § 2601(a).  Title 12 U.S.C. § 2607(a) provides that no person shall give or accept any "fee, kickback, or thing of value" for the referral of a real estate settlement service involving a federal mortgage loan.  Likewise, Section 2607(b) provides that no person shall give or accept a portion, split, or percentage of any charge made or received for the rendering of real estate settlement services, except for services actually performed, where a federal mortgage loan is involved.

RESPA, however, provides a qualified exemption from liability for affiliated business arrangements ("ABAs") which refer real estate settlement services between themselves.  In particular, Section 2607(c)(4) provides that a referral of settlement services to an ABA is not prohibited if:

> (A) a disclosure is made of the existence of such an arrangement to the person being referred and, in connection with such referral, such person is provided a written estimate of the charge or range of charges generally made by the provider to which the person is referred . . . (B) such person is not required to use any particular provider of settlement services, and (c) the only thing of value that is received from the arrangement, other than the payments permitted under

> this subsection, is a return on the ownership interest
> or franchise relationship.

24 C.F.R. § 3500.15(b) provides further clarification to Section 2607(c)(4), stating that an ABA is not in violation of RESPA if, prior to the referral, the person making the referral provides to the person being referred a written disclosure in the format of the "Affiliated Business Arrangement Disclosure Statement" set forth in Appendix D to 24 C.F.R. § 3500. This Appendix provides:

> This is to give you notice that [referring party] has a
> business relationship with [settlement services
> provider(s)]. [Describe the nature of the relationship
> between the referring party and the provider(s),
> including percentage of ownership interest, if
> applicable.] Because of this relationship, this
> referral may provide [referring party] a financial or
> other benefit.
>
> [A.] Set forth below is the estimated charge or range
> of charges for the settlement services listed. You are
> NOT required to use the listed provider(s) as a
> condition for [settlement of your loan on] [or]
> [purchase, sale, or refinance of] the subject property.
> THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS
> AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP
> AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST
> SERVICES AND THE BEST RATE FOR THESE SERVICES. . . .
>
> ACKNOWLEDGMENT
> I/we have read this disclosure form, and understand
> that [referring party] is referring me/us to purchase
> the above-described settlement service(s) and may
> receive a financial or other benefit as the result of
> this referral.

Private RESPA claims carry a one-year statute of limitation. 12 U.S.C. § 2614. Defendants contend that the statutory period for plaintiffs to file a RESPA claim commenced no later than May 2004, the date defendants assert plaintiffs' loan closed, and expired no later than May 2005. (Defs.' Mot. to Dismiss Pls.' Second Am. Compl. ("Defs.' Mot."), 5:3-5, filed Jan. 9, 2009.)

6

Although plaintiffs did not file their complaint until March 12, 2008, they allege that their RESPA claim is timely pursuant to the doctrines of equitable tolling, equitable estoppel, and/or delayed discovery.

### A. Equitable Tolling

Plaintiffs allege that the statute of limitations should be equitably tolled with respect to their RESPA claim because they were not fully informed of the relationship between Beazer and Security Title at the time of loan consummation, and could not determine whether fees received by Security Title for reinsurance services were disproportionate to the risk assumed by Security Title and thus represented sham payments. (SAC, ¶¶ 27-28, 32.) Plaintiffs allege that they first learned that the reinsurance fees exceeded the risk assumed by Security Title at the time of the HUD settlement in October 2007, such that the statute of limitations should be equitably tolled until the HUD settlement date. (Id. at ¶ 31.)

Equitable tolling extends the statute of limitations where, "despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence of his claim." Santa Maria v. Pacific Bell, 202 F.3d 1170, 1178 (9th Cir. 2000). The statutory period does not begin to run until the plaintiff should reasonably be aware of the existence of a possible claim. Socop-Gonzalez v. I.N.S., 272 F.3d 1176, 1195-96 (9th Cir. 2001). Equitable tolling "focuses on whether there was excusable delay by the plaintiff," and does not require any wrongful conduct by the defendant. Santa Maria, 202 F.3d at 1176. It is rarely appropriate to grant a motion to dismiss if equitable tolling is

at issue. <u>Huynh v. Chase Manhattan Bank</u>, 465 F.3d 992, 1003-04 (9th Cir. 2006) (holding, nonetheless, that the plaintiffs' claim was time-barred by the statute of limitations and could not be saved by equitable tolling).[4]

In this case, even accepting the allegations of the SAC as true, plaintiffs received adequate disclosure regarding the relationship between Beazer and Security Title prior to the announcement of the HUD settlement in October 2007, such that plaintiffs should have been aware of the possible existence of a RESPA claim. Three months prior to loan consummation, Beazer delivered to plaintiffs a document entitled "Affiliated Business Disclosure,"[5] which was nearly identical to the sample disclosure form provided for ABAs in Appendix D to 24 C.F.R. § 3500. Through this document, defendants informed plaintiffs of the

---

[4] The Ninth Circuit has yet to apply equitable tolling specifically to a RESPA claim. Defendants, however, do not raise the argument that equitable tolling is inapplicable to RESPA claims, and thus, for purposes of this motion, the court assumes *arguendo* that RESPA claims are subject to equitable tolling.

[5] Although the Affiliated Business Disclosure is not attached to plaintiffs' complaint, "[a] court may consider evidence upon which the complaint necessarily relies if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." <u>Marder v. Lopez</u>, 450 F.3d 445, 448 (9th Cir. 2006) (citations omitted). "The court may treat such a document as 'part of the complaint, and thus may assume its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" <u>Id.</u> (citing <u>U.S. v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003)). Plaintiffs' complaint refers to language contained in the Affiliated Business Disclosure, and the Affiliated Business Disclosure is central to plaintiffs' claim, as plaintiffs allege that the inadequate disclosures in this document serve as the basis for their RESPA claim. Further, plaintiffs do not question the authenticity of the copy attached to defendants' Rule 12(b)(6) motion. Accordingly, for purposes of this motion, the court takes judicial notice of the Affiliated Business Disclosure.

8

relationship between Beazer and Security Title; the form provided: "This disclosure is to give you notice that Beazer Homes Holding Corp. is affiliated, as a result of common ownership, with Beazer Mortgage Corporation, United Home Insurance Company and Security Title Insurance Company. Because of these relationships, this referral may provide Beazer Homes Holdings Corp. financial or other benefits." The Affiliated Business Disclosure further informed plaintiffs of any amount they would be charged for the reinsurance arrangement, as it stated: "**Security Title Insurance Company ('Security')** is a reinsurance company that reinsures a portion of the title insurance risk through a business relationship with First American Title Insurance Company . . . You will not be charged any fees in connection with this reinsurance agreement." (emphasis in original.) Lastly, the Affiliated Business Disclosure represented that plaintiffs were free to obtain title insurance through a company other than that recommended by Beazer; it provided: "You are not required to use Beazer . . . or Security Title . . . as a condition of the purchase of the property. **THERE ARE FREQUENTLY OTHER SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE . . . BEST TERMS FOR THESE SERVICES**." (caps in original) (emphasis in original). Thus, the contents of defendants' Affiliated Business Disclosure parallel the sample form provided for ABAs in Appendix D to 24 C.F.R. § 3500.

Both parties contend that Kay v. Wells Fargo & Co., 247 F.R.D. 572 (N.D. Cal. 2007) supports their respective positions.

In Kay, the plaintiff obtained a residential mortgage loan from the defendant lender, and due to the plaintiff's financial status, the defendant required that the plaintiff secure private mortgage insurance for the loan. Id. at 574. The plaintiff alleged that the lender had a kickback arrangement with several private mortgage insurers, whereby the lender referred mortgagors to private mortgage insurers who in turn reinsured with North Star Guaranty Reinsurance Company ("North Star"), a subsidiary of the defendant. Id. North Star's only source of business was reinsuring mortgage agreements financed by the defendant. Id. The plaintiff alleged that the payments made to North Star were a sham and thus violated RESPA because there was little risk transferred to North Star to justify the payments it received. Id. Although the plaintiff timely filed her RESPA claim, she sought to certify certain putative class members whose potential claims were filed beyond RESPA's statute of limitations. Id. at 576-77. The plaintiff argued that RESPA's one-year statute of limitations should be equitably tolled or estopped with respect to the putative class members and sought to consolidate these RESPA claims with her suit. Id.

The court held that equitable tolling was not applicable to the claims of the putative class members, as the "class members 'should have known of the possible existence' of a claim." Id. at 578 (citing Santa Maria, 202 F.3d at 1178). The court found it important that each borrower was provided with a written disclosure of the arrangement between North Star and the private mortgage insurers, and that the "actual amounts of all future charges and payments were known before closing." 247 F.R.D. at

578. The court acknowledged that rather than debating whether the borrowers possessed the necessary information to discover their claims, the real issue was whether the risk insured was commensurate with the amount charged by North Star. Id. While the court found that the "borrowers had no convenient way to judge the proportionality of the reinsurance payment allocated to North Star," the court reiterated that the law does not require a plaintiff to be aware of every particular element of a claim. Id. Instead, the court held that what is required is that a plaintiff be aware of the "possible existence" of a claim, and that "[t]hrough the disclosure statements, payment schedules, and general nature of the transaction, [the] plaintiff[s] [were] on notice of the possible existence of a claim." Id. The court emphasized that its holding was grounded in common sense, as "[t]o hold otherwise would throw open the limitation period for many, many years." Id.

Plaintiffs allege that Beazer, in violation of 12 U.S.C. § 2607(c)(4)(A), failed to disclose the amount the primary insurer paid to Security Title for reinsurance, such that plaintiffs did not have the ability to discover that defendants received sham payments in violation of RESPA. Assuming *arguendo* that defendants failed to disclose "the charge or range of charges generally made by the provider," as required by 12 U.S.C. § 2607(c)(4)(A),[6] plaintiffs still possessed, as in Kay,

---

[6] Plaintiffs argue that according to 12 U.S.C. § 2607(c)(4)(A), defendants were required to disclose the fees "earned" by Security Title for providing reinsurance services to the primary insurer. On the other hand, defendants argue that they complied with Section 2607(c)(4)(A) by disclosing the amount plaintiffs would be charged for consenting to the referral

11

sufficient information to have notice of the "possible existence" of a RESPA claim. Through the Affiliated Business Disclosure, plaintiffs were informed of the relationship between Beazer and Security Title, and were aware that Security Title would receive some form of compensation to provide reinsurance to the referred primary insurers. Further, plaintiffs were informed that they would not be charged additional fees in connection with the reinsurance arrangement, and were encouraged to "shop around" for the best rates for title insurance.

Even if defendants failed to disclose all information required by RESPA, this would not alone establish that plaintiffs are entitled to equitable tolling, as "the law does not insist that plaintiffs be aware of every particular element of their claim. Rather, all that is required is that plaintiffs be aware of the 'possible existence' of a claim." Kay, 247 F.R.D. at 578. Indeed, even if the fees charged by Security Title for reinsurance were disclosed at the time of loan consummation, plaintiffs would not have "had a convenient way to judge the proportionality of the reinsurance payment allocated to" Security Title, similar to Kay. Id. Thus, for purposes of providing plaintiffs notice of a possible RESPA claim, disclosing the fees charged by Security Title for reinsurance services was not

---

arrangement. The court is not entirely convinced that plaintiffs' interpretation of Section 2607(c)(4)(A) is correct. If plaintiffs' interpretation is adopted by the court, the referring party would have no obligation to disclose the fees actually incurred by the obligor through the referral arrangement. Such a result seems at odds with the underlying policy of RESPA, as it would permit the referring party to charge the obligor undisclosed settlement fees. For purposes of this motion, however, the court accepts plaintiffs' interpretation as correct.

12

especially important.

Further, the Affiliated Business Disclosure was provided to plaintiffs three months before the close of escrow, affording plaintiffs ample time to further inquire as to the relationship between Beazer and Security Title and seek greater information regarding the nature of the reinsurance arrangement. While plaintiffs allege that they "were ignorant of their claims" until October 2007, when the HUD settlement was disclosed (SAC, §§ 31-32), mere ignorance is not sufficient to equitably toll the statute of limitations. See Irwin v. Dep't of Veterans Affairs, 498 U.S. 89, 96 (1990) (holding that the statute of limitations for filing a claim will not be equitably tolled where the claimant fails to exercise due diligence in preserving his legal rights). Thus, even assuming defendants violated RESPA by receiving sham payments for reinsurance services, plaintiffs nonetheless had sufficient information to discover the "possible existence" of a claim.

Plaintiffs additionally allege that they did not possess information pertaining to their RESPA claim because they were not informed that (1) Security Title only acted as a reinsurer for policies involving property sold by Beazer and (2) there was an arrangement with the primary title insurer that all transactions referred by Beazer would be insured with Security Title. This information, however, was not "vital" to plaintiffs' RESPA claim. Not only were defendants not statutorily required to disclose such information, but the information disclosed via the Affiliated Business Disclosure was more than sufficient to put plaintiffs on notice of the possible existence of a RESPA claim.

13

Thus, through the Disclosure statement and the general nature of the referral arrangement, plaintiffs were on notice of the possible existence of a claim by the close of escrow in May 2004. "To hold otherwise would throw open the limitation period for many, many years." Kay, 247 F.R.D. at 578. Accordingly, the one-year statute of limitations applicable to plaintiffs' RESPA claim cannot be equitably tolled until October 2007. As such, plaintiffs' RESPA claim is not saved from the statute of limitations by equitable tolling.

**B.  Equitable Estoppel**

Plaintiffs alternatively allege that defendants should be equitably estopped from invoking the statute of limitations as a defense because defendants engaged in a knowing misrepresentation and concealment of material facts. Equitable estoppel, which is also known as fraudulent concealment in the limitations setting, "necessarily requires active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." Miguel, 202 F.3d at 1177. "Such conduct may be shown through affirmative representations or active concealment on the part of a defendant." Kay, 247 F.R.D. at 577. "Silence or passive conduct of the defendant is not deemed fraudulent, unless the relationship of the parties imposes a duty upon the defendant to make disclosure." Rutledge v. Boston Woven House & Rubber Co., 576 F.2d 248, 250 (9th Cir. 1978). In order to be entitled to equitable estoppel, a plaintiff must "plead with particularity the circumstances surrounding the concealment and state facts showing his due diligence in trying to uncover the facts." Id.

A court will decide whether to apply equitable estoppel after consideration of the following factors: (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied. Miguel, 202 F.3d at 1176.

Plaintiffs allege that defendants concealed material facts, including (1) that Beazer was certain to benefit from the referral; (2) that Security Title only acted as a reinsurer for title policies where Beazer was the seller of the property; (3) that Beazer had an agreement with the primary title insurer that all transactions referred by Beazer would by reinsured by Security Title; and (4) that the amount charged by Security Title for reinsurance services was not based on any loss history or actuarial analysis. (SAC, ¶ 28.) Further, plaintiffs allege that defendants actively misrepresented facts by stating that the referral to the primary insurer *may* result in a benefit to Beazer when defendants *knew* the referral would provide Beazer with a financial benefit. (Id.)

With regard to defendants' alleged concealment of material facts, plaintiffs have not demonstrated that the relationship of the parties imposed a duty upon defendants to make disclosures above and beyond those required by RESPA. Title 12 U.S.C. § 2607(c)(4), 24 C.F.R. § 3500.15, and Appendix D to 24 C.F.R. § 3500 require a referring party to make certain disclosures where that party is a member of an ABA. Plaintiffs offer no

15

authority to support the proposition that defendants were required to afford plaintiffs greater disclosure than that required by RESPA.

Moreover, assuming *arguendo* that plaintiffs' interpretation of 12 U.S.C. § 2607(c)(4)(A) is correct (see supra note 6 and accompanying text), defendants' alleged failure to comply with the disclosure requirements of Section 2607(c)(4)(A) is not sufficient to support a finding of equitable estoppel. First, plaintiffs do not adequately allege facts to show that they detrimentally relied upon defendants' nondisclosure. As stated earlier, even if the fees received by Security Title for reinsurance services were disclosed, plaintiffs would have been unable to compare the fees to the risk assumed by Security Title. Second, plaintiffs have not alleged sufficient facts evidencing an improper purpose on the part of defendants, or of defendants' actual or constructive knowledge of the deceptive nature of their conduct. An examination of the Affiliated Business Disclosure drafted by defendants shows that defendants attempted in good faith to comply with the disclosure requirements of RESPA. Moreover, plaintiffs do not state facts showing due diligence in trying to uncover the alleged nondisclosure. The Affiliated Business Disclosure informed plaintiffs of the relationship between Beazer and Security Title, and conveyed that although plaintiffs would not be charged for the reinsurance arrangement, Security Title would receive compensation for reinsurance services. Plaintiffs had ample opportunity to inquire as to the specific fees that Security Title received for their reinsurance services, yet plaintiffs elected not to probe the issue.

Although plaintiffs allege that defendants actively engaged in misrepresentation of facts by providing plaintiffs with a disclosure statement that conveyed that Beazer *may,* rather than *would*, receive a financial benefit from the referral, the court will not impose liability upon a party that adopted the exact language of the RESPA-mandated, HUD-approved disclosure statement for ABAs. Indeed, one court recently held that a borrower was not entitled to equitable estoppel where the basic facts surrounding the borrower's claim were disclosed via an Affiliated Business Disclosure Statement, which likewise provided that the defendant *may* receive a financial benefit that was in actuality nearly certain. Egerer v. Woodland Realty, Inc., __ F.3d __, No. 08-1173 2009 WL 331041, at *4-6 (6th Cir. Feb. 12, 2009). The court finds the reasoning of Egerer persuasive.

Lastly, plaintiffs' reliance upon Siemers v. Wells Fargo Funds Management, LLC, No. C-05-04518, 2006 WL 2355411 (N.D. Cal. Aug. 14, 2006) is misguided. In Siemers, the court held that a prospectus was materially misleading where it provided that a broker-dealer *may* award future business on the basis of sales even though the broker-dealer had previously entered into firm kickback arrangements. Id. at *22. Yet, Siemers is a securities fraud matter, and disclosure requirements for securities-related information is governed by statutory requirements that are wholly different from those mandated by RESPA. See, e.g., 15 U.S.C. § 77l; 15 U.S.C. § 78j(b). Siemers is therefore inapposite to this case.

Accordingly, for all of the above reasons, defendants are not equitably estopped from raising the statute of limitations as

a defense to plaintiffs' RESPA claim.

**C.   Delayed Discovery**

Plaintiffs alternatively allege that they are entitled to the "delayed discovery rule," such that the statute of limitations with respect to their RESPA claim did not commence until disclosure of the October 2007 HUD settlement. (SAC, § 33.)  An exception to the general rule that a cause of action accrues when all of its elements are complete is the discovery rule, which "postpones accrual of a cause of action until the plaintiff discovers, or has reason to discover, the cause of action." Norgart v. Upjohn Co., 21 Cal. 4th 383, 397 (1997) (citations omitted).  The plaintiff "discovers the cause of action when he at least suspects a factual basis, as opposed to a legal theory, for its elements, even if he lacks knowledge thereof." Id.  The plaintiff "need not know the specific facts necessary to establish the cause of action . . . but, within the applicable limitations period, he must indeed seek to learn the facts necessary to bring the cause of action in the first place-- he cannot wait for them to find him and sit on his rights." Id. at 398 (internal quotations and citations omitted).

Accepting the allegations of the complaint as true, plaintiffs were not aware of their RESPA claim until they learned of the HUD settlement and "consulted with professionals regarding their real estate transaction." (SAC,  ¶ 33.)  However, plaintiffs had all of the necessary facts to discover their RESPA claim before the close of escrow in May 2004.  Through the Affiliated Business Disclosure, plaintiffs were aware of the relationship between defendants and knew that they would not be

charged additional fees in connection with the reinsurance arrangement. Further, plaintiffs were informed that defendants stood to benefit from the referral, and that Security Title would be compensated for reinsurance services. Plaintiffs could have inquired as to the exact fees that Security Title charged for reinsurance, yet they did not do so. This is indeed a case where plaintiffs waited for all of the necessary facts to find them.

Accordingly, the discovery rule does not bar accrual of plaintiffs' RESPA claim.

**II. State Law Claims**

Subject to the conditions set forth in 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over state law claims. See Acri v. Varian Associates, Inc., 114 F.3d 999, 1000 (9th Cir. 1997)(en banc). The court's decision whether to exercise supplemental jurisdiction should be informed by values of "economy, convenience, fairness, and comity." Id. at 1001 (citations omitted). However, primary responsibility for developing and applying state law rests with the state courts. Therefore, when federal claims are dismissed before trial, district courts should usually decline to exercise supplemental jurisdiction. See Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 (1988); Gini v. Las Vegas Metropolitan Police Dept., 40 F.3d 1041, 1046 (9th Cir. 1994) (citing Schneider v. TRW Inc., 938 F.2d 986, 993 (9th Cir. 1991)). Because plaintiffs' RESPA claim, their only federal claim, has been dismissed, the court declines to exercise supplemental jurisdiction over plaintiffs' remaining state law claims. 28 U.S.C. § 1367(c).

/////

**CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss is GRANTED, and this matter is hereby remanded to the California Superior Court for the County of Placer.

IT IS SO ORDERED

DATED: March 23, 2009

_____
FRANK C. DAMRELL, JR.
UNITED STATES DISTRICT JUDGE